UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGELA M. BOSWELL

       Plaintiff,

     v.                         **REPORT AND RECOMMENDATION**
                                     **09-CV-0533 (NAM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.    Introduction

In May 2006, Plaintiff Angela Boswell filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since July 15, 2004, due to cervical spine and shoulder impairments as well as myofascial pain syndrome in her right shoulder. The Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through her attorney, Jaya A. Shurtliff, of the Olinsky, Shurtliff Law Firm, commenced this action on May 6, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On April 1, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for SSI and DIB on May 18, 2006, alleging disability beginning on July 15, 2004 (R. at 67).[1] Plaintiff alleged disability due to cervical spine and shoulder impairments as well as myofascial pain syndrome in her right shoulder. The applications were denied (R. at 52-56). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 47). A hearing was held in Syracuse, New York, on August 25, 2008, before ALJ John Flanagan (R. at 377-420). Plaintiff, represented by counsel, appeared and testified (R. at 382-420). On December 11, 2008, the ALJ issued a decision finding Plaintiff not disabled (R. at 16-28). Plaintiff filed a request for review of that decision (R. at 11). The ALJ's decision became the Commissioner's final decision on April 23, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 5-8).

Plaintiff, through counsel, timely commenced this action on May 6, 2009. (Docket No. 1). The Commissioner interposed an Answer on October 5, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on December 6, 2009. (Docket No. 12). The Commissioner filed a Brief in opposition on December 11, 2009. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 8).
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

remanded for further proceedings.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

---

[3]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is recommended that the matter be remanded for failure to fully develop the record.

### B.   Analysis

#### 1.  The Commissioner's Decision

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: Plaintiff was found to have met the insured status requirements of the Act through December 31, 2009 (R. at 18). The ALJ then found that Plaintiff had not engaged in substantial gainful activity as of her alleged onset date, July 15, 2004. Id. At step two, Plaintiff's "degenerative disc disease of the cervical spine with small C5-6 disc herniation, and right shoulder strain, status post acromioplasty" were found to be severe impairments. Id. At step three, the ALJ found that Plaintiff's impairments did not either singly or in combination, meet or medically equal a Listed impairment (R. at 21). The ALJ then found that Plaintiff

> ha[d] the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant [wa]s capable of doing occasional waist-to-chest lifts of 10 pounds, occasionally carrying of 10 pounds, and reaching above the shoulder with her left arm only, doing simple grasping and manipulating with both hands, and avoiding pushing and pulling repetitively with the right hand. She ha[d] no limitations, sitting, standing and walking

(R. at 23). Plaintiff's subjective complaints were found to be "not credible to the extent they [we]re inconsistent with the . . . residual functional capacity assessment" (R. at 27). The ALJ then found that Plaintiff was capable of performing her past work as a teacher's aide, both as she actually performed it and as it was generally performed. Id. Ultimately, the ALJ found that Plaintiff was not under a disability at any time from July 15, 2004, through the date of his decision (R. at 27).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to obtain Dr. Dominick Adornato's treatment notes; b) the ALJ erred in failing to find Plaintiff's depression to be a severe impairment; and c) the ALJ erred at several other points throughout the sequential evaluation. The Court will discuss each argument in turn:

### a) The ALJ Failed to Fully Develop the Record

Plaintiff argues that the ALJ erred in applying the treating physician rule and in failing to request Dr. Adornato's treatment notes. Plaintiff's Brief, pp. 18-20.

While Dr. Adornato, Plaintiff's treating neurosurgeon, failed to submit treatment notes, he did complete a questionnaire of Plaintiff's ability to work despite her impairments on September 8, 2008 (R. at 350-54). Dr. Adornato indicated that he had

been treating Plaintiff on a monthly basis from October 27, 2006 (R. at 250). Plaintiff similarly testified, on August 25, 2008, that had been seeing Dr. Adornato "[o]nce a month" for "over a good year" (R. at 392, 394). Dr. Adornato's opinions were significantly more restrictive than the RFC found by the ALJ, most notably in regards to Plaintiff's ability to sit, stand, and walk. For example, the ALJ found Plaintiff had no limitations in her ability to sit, stand, and walk (R. at 23). However, Dr. Adornato opined that Plaintiff could sit for only fifteen minutes at a time for a total of less than two hours in an eight-hour workday (R. at 351-52). Dr. Adornato further stated that Plaintiff was unable to stand for longer than twenty minutes at one time before need to sit or walk (R. at 351). Finally, Dr. Adornato opined that Plaintiff was able to stand/walk for less than two hours in an eight-hour workday (R. at 352).

The ALJ discounted Dr. Adornato's opinions, in part, because he found the neurosurgeon's sit, stand, and walk limitations to be unsupported by the record[4] (R. at 24). However, despite noting that "there [we]re no office notes to corroborate Dr. Adornato's opinion," the ALJ failed to make any attempt to re-contact Dr. Adornato to obtain the missing treatment notes (R. at 27). It is certainly possible, and even likely, that supporting evidence for Dr. Adornato's sit, stand, and walk limitations would be found in his treatment notes. As discussed below, by failing to request these treatment notes, the ALJ failed in his duty to develop the record.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47

---

[4] The ALJ also found that Dr. Adornato's opinions were inconsistent with other medical opinions (R. at 24).

(2d Cir. 1996). Furthermore, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)).

Despite acknowledging that the record did not contain Dr. Adornato's treatment notes, the ALJ failed to make any attempt to re-contact Dr. Adornato to develop the record (R. at 27). By failing to request treatment notes covering what appears to be two years of monthly visits, the ALJ failed in his duty to fully develop the record. See Longbardi v. Astrue, 2009 WL 50140 at *26 (S.D.N.Y. Jan. 7, 2009) (internal citations removed) (finding "a 'clear gap' in the record" where a treating physician "indicated that he examine[d] plaintiff every two months, [but] his progress notes skip from sometime in 2003 to September 27, 2004"); Metaxotos v. Barnhart, 2005 WL 2899851, at *5 (S.D.N.Y. Nov. 3, 2005) (remanding where the Commissioner conceded that the ALJ failed to develop the record by not obtaining treatment notes, records, or opinions from Plaintiff's treating psychiatrist).

Therefore, the Court recommends remand to allow the ALJ an opportunity to fully develop the record by requesting Dr. Adornato's treatment notes. ==Moreover, a==fter the treatment notes have been requested, the ALJ must reconsider whether Dr. Adornato's opinions are entitled to controlling weight under the Regulations. 20 C.F.R. § 404.1527(d)(2) (a treating source's opinion may be entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record").

### b) The ALJ Must Necessarily Reevaluate Dr. Heather MacAdam's Opinions

Based on the opinions from Dr. MacAdam, Plaintiff argues that the ALJ erred in finding her depression to be a non-severe impairment. Plaintiff's Brief, pp. 16-18. Plaintiff further contends that the ALJ erred in failing to obtain a Social Security Administration ("SSA") consultative psychological examination. Plaintiff's Brief, p. 17.

Dr. MacAdam began treating Plaintiff in April 2008 (R. at 313). On September 6, 2008, Dr. MacAdam completed a questionnaire of Plaintiff's ability to function despite her impairments[5] (R. at 339-44). The ALJ considered Dr. MacAdam's September 2008 assessment, but erroneously failed to evaluate whether her opinions were entitled to controlling weight. See 20 C.F.R. § 404.1527(d)(2) (a treating source's opinion may be entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"). The ALJ further erred by failing to state what, if any, weight was afforded to Dr. MacAdam's opinions. See Social Security Ruling 96-2p, 1996 WL 374188 at *5 (S.S.A.) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, . . .and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Therefore, on remand, the ALJ must weigh Dr. MacAdam's opinion in accordance with the Regulations and reevaluate whether Plaintiff's depression

---

[5] Dr. MacAdam also completed a questionnaire in May 2008 (R. at 313-19). However, Plaintiff bases her argument solely on Dr. MacAdam's September 2008 assessment. Plaintiff's Brief, pp. 16-17.

9

constituted a severe impairment. Furthermore, if on remand the evidence is insufficient to render a finding on Plaintiff's mental functioning, the ALJ should also consider whether to obtain an SSA consultative psychiatric examination. See 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

### c) The ALJ's Remaining Findings are Necessarily Flawed

Plaintiff argues that the residual functional capacity ("RFC") was flawed, the ALJ erred in evaluating her credibility, and the ALJ erred in finding her capable of performing her past work as a teacher's aide without obtaining evidence from a Vocational Expert. Plaintiff's Brief, pp. 20-24.

Because of the ALJ's previously discussed errors, his findings throughout the remainder of the sequential evaluation are necessarily flawed. However, the Court notes the following:

The ALJ found that Plaintiff was capable of performing her past work as a teacher's aide as it was actually performed (R. at 27). In assessing Plaintiff's RFC, the ALJ found that she was limited to "reaching above the shoulder with her left arm" (R. at 23). However, Plaintiff was never asked, either in a disability form or during the hearing, about the need to reach above her shoulder while working as a teacher's aide. Therefore, on remand, the ALJ should reconsider whether Plaintiff was capable of performing her past work as a teacher's aide as it was actually performed, and what evidence supports that conclusion.

## IV.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly develop the record.

## V.  Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:    Syracuse, New York
          September 7, 2010

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

_/s/ Victor E. Bianchini_
Victor E. Bianchini
United States Magistrate Judge


DATED:     Syracuse, New York
           September 7, 2010